IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DR. CARLOS R. ALCALA,

    Plaintiff,

    v.                                                                     Civil No. 10-1461 (GAG)

POPULAR AUTO, INC.,

    Defendant.

**OPINION AND ORDER**

On May 14, 2010, Dr. Carlos R. Alcala ("Plaintiff") filed this action against Popular Auto, Inc. ("PA") seeking damages for negligent or willful violations to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* (Docket No. 1). On August 15, 2011, PA filed a motion for summary judgment ("MSJ") and a counterclaim against Plaintiff in the amount of $10,017 (Docket No. 44). Plaintiff opposed the MSJ on November 4, 2011 (Docket No. 57). For the reasons discussed below, the court **GRANTS** the motion for summary judgment at Docket No. 58 and **DISMISSES** Plaintiff's claims against PA, and allows counterclaim against Plaintiff for payment of outstanding debt.

**I.**     **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the

**Civil No. 10-1461 (GAG)**                                        2

non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003))

## II. Factual and Procedural Background

In August 2009, Plaintiff applied for a Visa Platinum credit card from the Chase Manhattan Bank, which was denied due to an outstanding debt with PA that appeared on his credit report. (See Docket No. 1 at ¶ 7.) Plaintiff requested a copy of his credit history from Trans Union of Puerto Rico ("Trans Union"), a consumer reporting agency, and discovered that it reflected a debt in the amount of $10,017 with PA. (See Docket No. 1 at ¶¶ 7-8.) According to PA, this debt was the result of a breach of a lease agreement for an Infinity 2002 Q 45 Sedan that Plaintiff entered into with PA on October 6, 2003. The lease was for sixty (60) months and required Plaintiff to pay $1,123 each month beginning on October 1, 2003 for a total amount of $67,380.00. (See Docket No. 45 at ¶¶ 1-3.) The lease contract provided that if Plaintiff paid more than $25,000 over the course of the lease, he would be responsible for a residual payment of $17,000 at the end of the lease. (See Docket No. 53-1 at p.2, ¶2.)

Plaintiff alleges that he had fulfilled the terms and obligations of said lease and that he was never informed by PA that he had an outstanding debt related to the residual payment due at the end of the lease. (See Docket No. 1 ¶ 9-12.) Therefore, Plaintiff requested PA and Trans Union remove

**Civil No. 10-1461 (GAG)**                3

the allegedly false or inaccurate information from his credit report. According to Plaintiff, PA never responded to his request, but on or around October 27, 2009, Trans Union notified him that the information related to the lease in question had been removed from his credit report. (See Docket No. 1 ¶¶ 10,13.) In February 2010, Plaintiff applied for a Master Card from Citibank and it was also denied due to a negative credit report provided by Equifax Information Services of Puerto Rico, Inc. ("Equifax"), another consumer reporting agency. This report reflected the aforementioned debt in the amount of $10,017 with PA. (See Docket No. 1 ¶¶ 15-16.) Plaintiff filed the instant complaint against PA, Trans Union and Equifax for ruining his credit with allegedly false or inaccurate information. (See Docket No. 1.) Plaintiff moved to dismiss with prejudice the complaint filed against Equifax and Trans Union. (See Docket No. 25, 32.) The court entered judgment accordingly. (See Docket No. 27, 34.) Presently before the court remains the complaint filed by Plaintiff against PA and PA's MSJ and counterclaim for Plaintiff's outstanding debt. (See Docket No. 44.)

### III.    Discussion

The FCRA was originally enacted to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Chiang v. Verizon New England Inc., 595 F.3d 26, 34 (1st Cir. 2010). Also, the act expressly creates a private cause of action, enabling consumer suits for willful or negligent noncompliance with its requirements. 15 U.S.C. §§ 1681n-o. For negligent violations, Plaintiffs may recover actual damages, (15 U.S.C. § 1681 o(a)(1)). For willful violations, Plaintiffs may recover actual or statutory and punitive damages, id. § 1681n(a)(1)-(2).

In 1996, Congress substantially amended the FCRA. See, e.g., H.R.Rep. No. 108-396, at 1753-54 (2003) (Conf. Rep.). Congress adopted a new section governing the responsibilities of so-called "furnishers"[1] of information to consumer reporting agencies ("CRAs"). See Consumer

---

[1] Any person with relevant data about a consumer's financial activity may voluntarily provide

**Civil No. 10-1461 (GAG)**                              4

Credit Reporting Reform Act of 1996, Pub.L. No. 104-208, ch. 1, sec. 2413, § 623, 110 Stat. 3009-426, 3009-447 to -449 (codified as amended at 15 U.S.C. § 1681s-2). This addition intended to close an identified "gap in the FCRA's coverage," whereby even dutiful investigations of consumer disputes by CRAs could be frustrated by furnishers' irresponsible verification of inaccurate information, without legal consequence to the furnishers. S.Rep. No. 103-209, at 6 (1993).

Under § 1681s-2, furnishers may not provide inaccurate information to consumer reporting agencies. See 15 U.S.C. § 1681s-2(a)(1). Furnishers also have specific duties in the event of a dispute over furnished information. See id. at § 1681s-2(b). Only the second of these duties is subject to a private cause of action. Section 1681s-2(a) prohibits any person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." Id. at § 1681s-2(a)(1)(A). Congress expressly limited furnishers' liability under § 1681s-2(a) by prohibiting private suits for violations of that portion of the statute. Id. at § 1681s-2(c)(1). Section 1681s-2(b), outlines a furnisher's duties when a consumer disputes the completeness or accuracy of information in their credit report. Under the FCRA, consumers generally notify CRAs of such disputes. See id. at § 1681i(a)(1). Although a consumer may dispute credit information directly to a furnisher, the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification. See Chiang, 595 F.3d at 35.

The First Circuit has held that plaintiffs' burden of proof when suing furnishers under FCRA § 1681s-2(b) consists of making a showing of actual inaccuracy in the disputed information provided to CRAs. Section 1681i(a) mandates that a CRA reinvestigate reported information to determine whether the disputed data is "inaccurate." Section 1681s-2(b) imposes essentially the same obligation on furnishers of information, requiring them to determine if furnished information is

---

it to a CRA, but "[t]he most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." H.R. Rep. 108-263, at 24 (2003). In the case at bar, PA is sued as a furnisher of information. In the instant case PA acted as a furnisher of information.

**Civil No. 10-1461 (GAG)**                                    5

"incomplete or inaccurate." "The FCRA is intended to protect consumers against the compilation and dissemination of inaccurate credit information." See DeAndrade v. Trans Union LLC, 523 F.3d 61, 67 (1st Cir. 2008). "In light of the parallel obligations imposed on CRAs and furnishers-and the narrow purpose of the amendments to the FCRA-that same rationale supports requiring a showing of actual inaccuracy in suits against furnishers." See Chiang, 595 F.3d at 38.

When a consumer disputes credit information to a CRA, the CRA must advise the furnisher of the data that a dispute exists and provide the furnisher with "all relevant information regarding the dispute that the agency has received from the consumer." Id. at § 1681i(a)(2)(A). Once notified by a CRA, a furnisher must:

> (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency....; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . , for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly-(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

See Chiang, 595 F.3d at 36.

In the case at bar, Plaintiff has not demonstrated that the information furnished by PA to the CRAs was inaccurate. In fact, the record shows that Plaintiff has an outstanding debt with PA for failing to pay the residual amount that he agreed to pay under the lease agreement in question. According to PA's Statement of Uncontested Facts ("SOUF"), Plaintiff complied with the payment of $1,123 in sixty (60) months installments, until October 2008, pursuant to the lease agreement. (See Docket No. 53-3 at 8, L. 12-24; at 9, L. 1-14.) On October 8, 2008, when the sixty month term had elapsed, Plaintiff, by way of his wife, voluntarily surrendered the leased vehicle to PA without paying the lease residual amount of $17,000. (See Docket No. 53-3 at 3, L. 7-9.) At the end of the lease Plaintiff's attorney contacted PA and was informed that Plaintiff needed to finance the residual amount or pay for it  (See Docket No.45 at ¶ 7.) According to Plaintiff's deposition, he had previously leased other vehicles from PA and he understood the meaning of the residual value of a

**Civil No. 10-1461 (GAG)**                    6

leased property. (See Docket No. 53-3 at 10, L. 18-20, 21-24.) He also knew that according to the lease agreement, the residual value of the car was $17,000, since the original value of the lease was over $25,000. (See Docket No. 53-3 at 10, L. 14-16.)

The record shows that PA notified Plaintiff, via certified letter, that as a result of his failure to pay the residual amount, he owed PA $17,502.08. (See Docket No. 53-2 at 1.) Plaintiff was again notified through a certified letter that the vehicle in question had been sold for $7,500 and that he was obliged to pay for the difference between the sale price and the residual amount owed to PA. (See Docket 53-2 at 2.) As a result, Plaintiff owed PA $10,017.08. Plaintiff has failed to pay PA the aforementioned debt pursuant to the lease agreement; therefore, the information provided by PA to Trans Union and Equifax was accurate. As a result PA is not liable to Plaintiff under the FCRA.

Accordingly, the court **GRANTS** the motion for summary judgment and **ORDERS** Plaintiff to pay PA the amount of $10,017.08 in compliance with the terms of the lease agreement.

**SO ORDERED.**

In San Juan, Puerto Rico this 5th day of December, 2011.

                                                                    *S/Gustavo A. Gelpí*
                                                                    GUSTAVO A. GELPÍ
                                                                    United States District Judge

**Civil No. 10-1461 (GAG)** 7